UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SWORDFISH PARTNERS, a Florida
Joint Venture,

        Plaintiff,

v.                                                                    CASE NO.: 8:18-cv-1808-T-33SPF

The S. S. NORTH CAROLINA, her hull,
cargo, tackle, boilers, machinery and
appurtenances, which lies within one nautical
mile of a point with coordinates 33 degrees
24'00" North Latitude and 78 degrees 40'00"
West Longitude,

        Defendant *In Rem*.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff Swordfish Partners' Renewed Motion for Default Judgment (Doc. 42). Plaintiff seeks, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, default judgment granting Plaintiff the ownership of the S.S. NORTH CAROLINA and default judgment against potential claimants. For the reasons set forth below, it is recommended that the motion be denied in part and granted in part.

    **I.**    **BACKGROUND**

Plaintiff is engaged in the business of deep ocean exploration and recovery of shipwrecks and their cargo, tackle, boilers, machinery and her appurtenance (Doc. 1 at ¶ 1). Plaintiff filed this *in rem* action on July 24, 2018, against Defendant the S.S. NORTH CAROLINA, her hull, cargo, tackle, boilers, machinery and her appurtenances, which sank

July 26, 1840 (Doc. 1 at ¶ 2). The shipwreck is located outside the territorial seas of the United States approximately 18 nautical miles east of Myrtle Beach, South Carolina, and the salvage area lies within one nautical mile of a point with coordinates 33º 24'00" North Latitude and 78º 40'00" West Longitude (Doc. 1 at ¶ 2 and p. 10 ¶ 7). To secure its rights over the salvage, Plaintiff filed a two-count Complaint in this Court asserting a salvage award claim (Count I) and a possessory and ownership claim (Count II) under the Supplemental Rules to the Federal Rules of Civil Procedure as well as Local Admiralty Rule 7.03, M.D. Fla. (Doc. 1).

The Court granted Plaintiff's motion for warrant of arrest of the Defendant vessel (Doc. 2)[1] and ordered the Clerk to issue a warrant of arrest *in rem* (Doc. 7). The Court also ordered that Plaintiff be appointed Substitute Custodian of the vessel and any objects recovered therefrom (Doc. 16). Plaintiff published notice of the arrest in THE POST & COURIER in Charleston, South Carolina (Affidavit of Publication, Doc. 17) and THE STAR-NEWS of Wilmington, North Carolina (Affidavit of Publication, Doc. 18) on August 15, 2018. Plaintiff also published notice of the arrest in THE TAMPA BAY TIMES in Tampa, Florida on January 9, 2019 (Affidavit of Publication, Doc. 36). Upon Plaintiff's motion for entry of Clerk's default (Doc. 40) and there being no claims filed within the time period

---

[1] Plaintiff's Motion for Order Directing Clerk to Issue Warrant of Arrest In Rem (Doc. 2) states that Plaintiff "recovered a bronze spike from the vessel that will be delivered to the Court for the purpose of arresting the shipwreck, her appurtenances, apparel, tackle, appurtenances and cargo…." Subsequently, in its Motion for Appointment of Substitute Custodian (Doc. 11), Plaintiff indicated that the spike "is now within the District, i.e., Clearwater, Florida, and is subject to the Court's rulings" (Doc. 11 at ¶ 4).

set forth in Supplemental Rule C(6) and Local Admiralty Rule 7.03(f), the Clerk entered default on March 6, 2019 (Doc. 41).[2]

As for the salvaging of the S.S. NORTH CAROLINA artifacts, Plaintiff asserts that it has been surveying the ship wreck site for items that were not recovered by Marex.[3] (Doc. 21 at 2).  Prior to extensive recovery of the artifacts, which are scattered over dozens of acres, Plaintiff plans to continue to survey the site with devices such as side-scan sonar, magnometer and other devices in order to make recovery systematic and economical. (*Id.*). "Plaintiff believes that it will need 2019 and 2020 to complete the survey and recover the most valuable and interesting artifacts from the site." (*Id.* at 3).  Plaintiff reports that the 2018 salver season[4] was interrupted by Hurricane Florence, which made landfall at Wilmington, North Carolina on September 14th. (*Id.*).

---

[2] Plaintiff previously moved for Clerk's default (Doc. 24), which was entered by the Clerk (Doc. 27).  Plaintiff then made a motion for default judgment (Doc. 28) upon which the undersigned entered a Report and Recommendation (Doc. 32) substantially similar to the one at hand, which recommended the motion for default be denied without prejudice based on the same jurisdictional issues discussed *infra* herein and a procedural notice defect.  Plaintiff filed a Notice of Acceptance of Court's Report and Recommendation (Doc. 33) and resolved the procedural notice defect (Doc. 36).  Plaintiff then filed the instant Renewed Motion for Default Judgment (Doc. 42), which contains the same memorandum of law as found in its first motion for default judgment ostensibly ignoring the jurisdictional issues raised in the Court's initial Report and Recommendation.

[3] Marex is a partner of Plaintiff's and was the first to find the wreck site of the S.S. NORTH CAROLINA. Marex salvaged from the site from 1996 through about 1997 and thereafter abandoned the site. (Doc. 1 at ¶¶ 5, 7 and p. 13; Doc. 21 at 2 n. 1).

[4] "A salvage season is that portion of the year that weather conditions permit divers to attempt salvage operations. Typically this is from March until August in the southeastern United States." *Marex Int'l, Inc. v. Unidentified, Wrecked & Abandoned Vessel*, 952 F. Supp. 825, 830 n. 1 (S.D. Ga. 1997).

Plaintiff now moves this Court for entry of default judgment against the Defendant S.S. NORTH CAROLINA, her hull, cargo, tackle, boilers, machinery and appurtenances, wherever they may lie; against any claimant who resided in Wilmington, North Carolina or Charleston, South Carolina on August 15, 2018, or resided in the Middle District of Florida on January 9, 2019,[5] when notice of the arrest of the S.S. NORTH CAROLINA, was respectively published or who otherwise had actual notice; and for the Court to direct the Clerk to (1) enter judgment awarding Plaintiff clear title to the bronze spike being held for the Court by the Plaintiff as Substitute Custodian and the S.S. NORTH CAROLINA before the Court by virtue of the spike, (2) administratively close this case with leave to reinstate the case to active status upon proper motion if and when Plaintiff requires further affirmative recoveries from the S.S. NORTH CAROLINA's hull, cargo, tackle, boilers, machinery or appurtenances, and (3) to open this case from time to time for other good cause (Doc. 42 at 3).

## II. DISCUSSION

### A. Jurisdiction

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1333. Moreover, this Court has jurisdiction *in rem* over the artifacts recovered by Plaintiff and brought within this district. *Marex Int'l*, 952 F. Supp. at 828 (citing *Moyer v. The Wrecked & Abandoned Vessel known as The Andrea Doria*, 836 F. Supp. 1099, 1104 (D.N.J.

---

[5] The Court notes a typographical error in Plaintiff's motion. The motion references January 8, 2019, as the publication date of the notice of arrest (Doc. 42 at 3), but the Affidavit of Publication indicates the notice was published on January 9, 2019 (Doc. 36).

1993)). An *in rem* action for a salvage award against artifacts recovered from the remains of a shipwreck over a century old states a claim within this Court's admiralty jurisdiction, governed by the judicial law of finds or doctrine of maritime salvage. *Cobb Coin Co. v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, 525 F. Supp. 186, 203 (S.D. Fla. 1981) (citing *Treasure Salvors, Inc. v. The Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir. 1978) (*Treasure Salvors I*)).

### B. Standard

Local Admiralty Rule 7.03(i) spells out the procedures a plaintiff in an admiralty case must follow when moving for the entry of a default judgment. In particular, "[n]ot sooner than seven (7) days nor later than thirty (30) days following notice of the entry of default, the moving party shall file a motion, and supporting legal documents, for the entry of default judgment pursuant to Rule 55(b)[.]" L.A.R. 7.03(i), M.D. Fla. And when no person has filed a claim or answer – as is the case here – "the motion for default judgment will be considered by the court without oral argument." *Id*. at 7.03(i)(1). Under Rule 55(b), a default judgment may be entered "against a defendant who never appears or answers the complaint, for in such circumstances the case has never been placed at issue." *Fifth Third Bank v. Fla. Caring Hands Corp.*, No. 3:14-cv-212-J-39MCR, 2014 WL 12609868, at *1 (M.D. Fla. July 21, 2014) (quoting *Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986)). Before entering a default judgment, a court must confirm that it has jurisdiction over the claims and the absent defendant and that the complaint adequately states a claim. *Odyssey Marine Exploration, Inc. v.*

5

*Unidentified, Wrecked, and Abandoned Sailing Vessel*, 727 F. Supp. 2d 1341, 1345 (M.D. Fla. 2010) (*Odyssey II*).

### C. Default Judgment

In general, the recovery of property lost at sea is controlled by either the law of salvage or the law of finds. "Under the law of salvage, rescuers take possession of, but not title to, the distressed vessel and its contents" and secure a salvage award. *Int'l Aircraft Recovery, LLC v. Unidentified, Wrecked and Abandoned Aircraft*, 218 F.3d 1255, 1258 (11th Cir. 2000). The law of salvage presumes that property lost at sea is not abandoned (and thus the true owner retains title to the lost property); a salvage award functions as a trust on behalf of the true owner of the property. *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999) (*Titanic I*). The law of finds, on the other hand, is basically "finders keepers," *i.e.*, the finder acquires title to property abandoned at sea by "reduc[ing] the property to his or her possession." *Klein v. Unidentified Wrecked & Abandoned Sailing Vessel*, 758 F.2d 1511, 1514 (11th Cir. 1985). Under the law of finds, the finder acquires the property for his own benefit.

Although Plaintiff's Complaint asserts claims under both the law of salvage and the law of finds and Plaintiff discusses the law of each in its motion, Plaintiff moves for default judgment as to its law of finds ownership claim only (Count II) (Doc. 42 at ¶ 2). *See R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel,* 435 F.3d 521, 531, 535 (4th Cir. 2006) (*Titanic III*) (claimant cannot invoke both law of finds and law of salvage to a single recovery because they "serve different purposes and promote different behaviors"). This comports with well-settled admiralty law: "In virtually all of the treasure salvage cases

6

involving wrecks of great antiquity, the law of finds, not salvage, is appropriate because 'the disposition of a wrecked vessel whose very location has been lost for centuries as though its owner were still in existence stretches a fiction to absurd lengths.'" Schoenbaum, Thomas A*., 2 Admiralty & Mar. Law* § 16-7 (5th ed.) (2017) (quoting *Treasure Salvors I,* 569 F.2d at 337); *see also Odyssey II*, 727 F. Supp. 2d at 1344. Accordingly, the law of finds applies.

An additional wrinkle is that the wreckage is in international waters. *In rem* jurisdiction "is dependent on the court's jurisdiction over the *res*, the property named as the defendant." *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1171 (11th Cir. 2011) (*Odyssey III*); *see also United States v. One Lear Jet Aircraft*, 836 F.2d 1571, 1573 (11th Cir. 1988) (*en banc*). The doctrine of constructive possession operates to extend *in rem* jurisdiction when delivering the entire *res* to the custodian is a practical impossibility (*i.e.*, because the *res* is on the ocean floor). *Odyssey II*, 727 F. Supp. 2d at 1346. This doctrine, however, applies only if the entire *res* is located within the territorial jurisdiction of the forum. *See Odyssey III*, 657 F.3d at 1171 ("Only if the court has exclusive custody and control over the property does it have jurisdiction over the property so as to be able to adjudicate rights in it that are binding against the world.") (citation and quotation marks omitted). In exercising *extra*-territorial jurisdiction, "a court must be sensitive to the principle of international comity[,] . . . as the application of international law evokes a sense not only of discretion and courtesy but also of obligation among sovereign states. . . . [T]he court's perspective is guided by reasonableness."

*Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 675 F Supp. 2d 1126, 1132-33 (M.D. Fla. 2009) (*Odyssey I*).

There are two exceptions to the requirement that the *res* be located within the territorial jurisdiction to exercise constructive possession, and neither applies here. The first, a creature of *quasi in rem* jurisdiction, allows the court to adjudicate competing rights to the *res* asserted by parties over whom the court has *in personam* jurisdiction. *Odyssey II*, 727 F. Supp. 2d at 1346. However, while "*quasi in rem* jurisdiction permits a determination of rights between the parties to the litigation; the court cannot adjudicate the rights of an absent third party over whom the court enjoys no jurisdiction," and here no claimant has appeared. *Id.* at 1347. The second exception extends *in rem* jurisdiction in cases proceeding under the law of salvage where the *res* is outside of the territorial jurisdiction of the court (dubbed constructive *in rem* jurisdiction). *Id.* at 1348 (citing *Titanic I*, 171 F.3d at 964, 967-68). As explained above, this case involves the law of finds, not the law of salvage.

Plaintiff essentially asks the Court to exercise *in rem* jurisdiction over the wreckage, which remains in international waters, and to declare Plaintiff the owner of the vessel under the law of finds. "Under the law of finds, '[a] finder cannot exclude others from their attempts to obtain first possession of artifacts recovered from an abandoned wreck.'" *Id.* at 1348 (quoting *Titanic III,* 435 F.3d at 535). As such, Plaintiff's request oversteps this Court's *in rem* jurisdiction. The district judge explained it well in *Odyssey II*:

> No substantial benefit accrues from an expanded extra-territorial jurisdiction that allows a court to grant exclusive title to a wreck in international water on an unopposed default judgment. The law of finds

8

>permits the plaintiff to secure title to any previously abandoned find by transporting the find within the territorial jurisdiction of the court. If another salvor (subject to *in personam* jurisdiction) unlawfully interferes with property that the plaintiff possesses, the plaintiff can employ the *quasi in rem* jurisdiction used in *Treasure Salvors I*. If the court cannot exercise in personam jurisdiction over a competing salvor in possession of the plaintiff's rightful property and the property remains outside the territorial jurisdiction of the court, a declaration of title proves useless. The court cannot force a competing salvor to return plaintiff's rightful property without *in personam* jurisdiction over the competing salvor or actual control of the property.

*Id*. at 1349. Consequently, the Court's *in rem* jurisdiction does not extend to the wreck and artifacts still on the floor of the Atlantic Ocean, within international waters. For these reasons, default judgment declaring Plaintiff the owner of the vessel should be denied.

Plaintiff, however, can secure title as to salvaged artifacts under the law of finds but only after bringing the artifacts within the territorial jurisdiction. "To establish a claim under the law of finds, a finder must show (1) intent to reduce property to possession, (2) actual or constructive possession of the property, and (3) that the property is either unowned or abandoned." *Titanic III*, 435 F.3d at 534-35. Plaintiff has proven these elements and demonstrated entitlement to default judgment as to the artifact that it uncovered from the wreckage and delivered to the substitute custodian's care. As such, Plaintiff is entitled to clear title of the bronze spike being held for the Court by the Plaintiff as Substitute Custodian. Therefore, it is recommended for the Court to retain jurisdiction to adjudicate Plaintiff's claims to title as to artifacts recovered from the Defendant wreck site on a periodic basis. Plaintiff should be directed to annually file in this Court its claim stating with specificity the value of the artifacts salvaged in the previous calendar year and cataloguing those artifacts and should be advised that any failure to file by a date certain

set by the Court will constitute prima facie evidence that Plaintiff has abandoned its recovery efforts at the Defendant wreck site, and, after which, this case will be closed.

Accordingly, for the foregoing reasons, it is hereby

**RECOMMENDED**:

1) Plaintiff's Motion for Default Judgment (Doc. 42) be granted as to the bronze spike being held for the Court by the Plaintiff as Substitute Custodian and otherwise denied.

2) The Clerk of Court be directed to enter judgment awarding Plaintiff clear title to the bronze spike being held for the Court by the Plaintiff as Substitute Custodian.

3) The Court administratively close this case but retain jurisdiction over this action in order to adjudicate title to artifacts recovered by Plaintiff in the future and brought to the Court.

4) The Court direct Plaintiff to annually file by a date certain its claim stating with specificity the value of the artifacts salvaged in the previous calendar year and cataloguing those artifacts and to move to reinstate this case to active status upon proper motion when Plaintiff requires further affirmative relief from the Court.

5) The Court advise Plaintiff that failure to file its claim by said date certain each year will constitute prima facie evidence that Plaintiff has abandoned its recovery efforts at the Defendant wreck site, and, after which, this case will be closed.

**IT IS SO REPORTED** in Tampa, Florida, on this 23rd day of April, 2019.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Fed. R. Civ. P. 72(b)(2). A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit and waives that party's right to challenge anything to which no specific objection was made. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1; Local Rule 6.02, M.D. Fla.

cc:    Hon. Virginia M. Hernandez Covington